UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAMES EARL WHITE,                )
                                 )   No. CV-07-374-CI
          Plaintiff,             )
                                 )   ORDER DENYING PLAINTIFF'S
v.                               )   MOTION FOR SUMMARY JUDGMENT
                                 )   AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner  )   MOTION FOR SUMMARY JUDGMENT
of Social Security,              )
                                 )
          Defendant.             )
                                 )
                                 )

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 14, 17.) Attorney Lora Lee Stover represents plaintiff James Earl White (Plaintiff); Special Assistant United States Attorney Thomas Elsberry represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

On March 31, 2004, Plaintiff protectively filed for Social Security benefits. (Tr. 94, 590.) He alleged disability due to lower back injuries, shoulder problems and neck pain, with an alleged onset date of January 1, 1998, as amended at the administrative hearing. (Tr. 62, 82, 629.) Benefits were denied

initially and on reconsideration. (Tr. 59, 600.) Plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held on March 6, 2007, before ALJ Richard Say. (Tr. 625-63.) Plaintiff, who was represented by counsel, and vocational expert Tom Moreland testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 8-11.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 35 years old and single. (Tr. 631.) He testified he had a high-school degree and two years of college. He lived with his mother in her trailer. (Tr. 632.) Plaintiff had past work experience as a sales representative and a ticket taker. (Tr. 654-55.) He testified he could not work due to problems with his shoulder, arm, neck and back. He stated his condition was worsening, and he had been taking depression medication since 2006. He testified he could take care of his personal needs, did dishes, and laundry, shopped and drove when he was not on medication. He spent his day watching television for about two hours, reading, visiting friends and his daughter, and playing with his dog. (Tr. 632-38.) Some days he attended a football game. (Tr. 649.) He stated he could not lift more than ten pounds, and could sit for five to ten minutes before he had to move around, stand for five minutes, walk for ten minutes and climb a couple of flights of stairs. (Tr. 639-41.) He testified he could only be active for five to fifteen minutes. (Tr. 650.)

**ADMINISTRATIVE DECISION**

The ALJ found Plaintiff met insured status requirements for disability benefits through September 30, 2000. At step one of the sequential evaluation process, ALJ Say found Plaintiff had not engaged in substantial gainful activity during the relevant time. (Tr. 24.) At step two, the ALJ gave a thorough and detailed summary of the medical evidence and found Plaintiff had the severe impairments of "thoracic outlet syndrome status post surgery, times two, spine problems, left ankle deformity, left AC joint arthrosis status post surgery, and depression and anxiety." (*Id.*) At step three, he determined the impairments, alone or in combination with other impairments, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 32.) The ALJ found Plaintiff's allegations regarding symptoms and limitations were not totally credible. (Tr. 34.) At step four, he determined Plaintiff had a residual functional capacity (RFC) for light work with several postural limitations. Further, he found Plaintiff would need to change positions from time to time, and was limited to work with "short and simple instructions and superficial interaction with coworkers and the general public." (Tr. 32-33.) After consideration of vocational expert testimony and other evidence, the ALJ concluded Plaintiff could perform his past work as a ticket taker. (Tr. 35.) In alternative step five findings based on vocational expert testimony, the ALJ found there were sedentary jobs in the national economy that Plaintiff could perform, such as cashier or assembly worker. (Tr. 35.) He concluded Plaintiff was not disabled as

1  defined by the Social Security Act.  (Tr. 22.)

2                          **STANDARD OF REVIEW**

3       In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

4  court set out the standard of review:

5          A district court's order upholding the Commissioner's
        denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
6       211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
        Commissioner may be reversed only if it is not supported
7       by substantial evidence or if it is based on legal error.
        *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
8       Substantial evidence is defined as being more than a mere
        scintilla, but less than a preponderance.  *Id.* at 1098.
9       Put another way, substantial evidence is such relevant
        evidence as a reasonable mind might accept as adequate to
10      support a conclusion.  *Richardson v. Perales*, 402 U.S.
        389, 401 (1971).  If the evidence is susceptible to more
11      than one rational interpretation, the court may not
        substitute its judgment for that of the Commissioner.
12      *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
        Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

13
14          The ALJ is responsible for determining credibility,
        resolving conflicts in medical testimony, and resolving
15      ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
        Cir. 1995).  The ALJ's determinations of law are reviewed
16      *de novo*, although deference is owed to a reasonable
        construction of the applicable statutes.  *McNatt v. Apfel*,
        201 F.3d 1084, 1087 (9th Cir. 2000).
17

18                        **SEQUENTIAL PROCESS**

19      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

20  requirements necessary to establish disability:

21          Under the Social Security Act, individuals who are
        "under a disability" are eligible to receive benefits.  42
22      U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any
        medically determinable physical or mental impairment"
23      which prevents one from engaging "in any substantial
        gainful activity" and is expected to result in death or
24      last "for a continuous period of not less than 12 months."
        42 U.S.C. § 423(d)(1)(A).  Such an impairment must result
25      from "anatomical, physiological, or psychological
        abnormalities which are demonstrable by medically
26      acceptable clinical and laboratory diagnostic techniques."
        42 U.S.C. § 423(d)(3).  The Act also provides that a
27      claimant will be eligible for benefits only if his
        impairments "are of such severity that he is not only

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the

ALJ erred when he: (1) improperly assessed Plaintiff's residual functional capacity; (2) rejected the opinions of treating physicians; and (3) found Plaintiff was not credible. (Ct. Rec. 15 at 13-15.)

**DISCUSSION**

**A.    Credibility**

At step four of the sequential evaluation, ALJ Say found Plaintiff's "subjective complaints regarding the extent of his functional limitations are not fully credible." (Tr. 34.) Plaintiff argues the record does not support the ALJ's credibility assessment. (Ct. Rec. 15 at 15-16.)

When an ALJ finds the claimant's testimony as to the severity of pain and limitations due to impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). While the ALJ cannot disregard a claimant's subjective complaints regarding the severity of his or her symptoms solely because there is a lack of objective medical evidence to support the testimony, there must be some objective medical evidence of an impairment for the time at issue. However, the lack of objective medical evidence is just one factor considered by the Commissioner. *Bunnell*, 947 F.2d at 346. Once there is evidence of a medically determinable impairment likely to cause an alleged symptom, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *(Id.)* In the absence

of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

In addition to the "ordinary techniques of credibility evaluation," the following factors may be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and her conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Thomas*, 278 F.3d at 958.

Here, there is no affirmative evidence of malingering; thus, the ALJ's credibility determination must be supported by "clear and convincing" reasons.  In his credibility findings, ALJ Say first reasoned that medical evidence indicated negative findings both on examination and in imaging and objective testing.  Specifically, he noted medical sources reported "negative neurological findings, normal gait, normal strength, normal sensation, and normal muscle bulk and tone" in Plaintiff's physical condition.  (Tr. 34.)  In addition to the medical evidence, the ALJ specifically identified other factors that impugn Plaintiff's credibility regarding limitations due to pain.  He specifically found Plaintiff failed to comply with prescribed physical therapy treatment, even though all

of the specialists reported this was the only alternative for relief. He also found treating and examining physicians opined Plaintiff was capable of light or sedentary work and psychological evaluations indicated over-reporting of symptoms. *Id*. These reasons are "clear and convincing" and supported by the record. (*See, e.g.,* Tr. 206-07,211, 213, 222, 224, 311, 355, 358, 421, 433, 443, 523.)

Further, in his detailed summary of the evidence, the ALJ referenced the opinion of treating specialist Scott Redman, M.D., that Plaintiff's pain "was a rehab issue" and repeatedly prescribed physical therapy. (Tr. 30, 386.) Plaintiff's unexplained failure to follow treatment recommendations of medical specialists is a permissible reason for discounting Plaintiff's testimony. *Tommasetti*, 533 F.3d at 1039 (claimant's failure to pursue aggressive conservative treatment is valid reason to discount credibility); *Fair*, 885 F.2d at 603 (unexplained, or inadequately explained, failure to follow a prescribed course of treatment may negatively affect a claimant's credibility determination). Dr. Redman also opined Plaintiff's physical condition did not explain the degree of pain reported in his AC joints. (Tr. 31, 537.) The ALJ also noted that examining physical medicine specialist Larry Lamb, M.D., after reporting negative MRI and bone scan results, observed Plaintiff "runs a risk of being over-treated" and commented he was unsure why Plaintiff "seems to regard himself as disabled." (Tr. 30, 518-20.)

Other ALJ findings support the credibility determination: in 2007, examining psychologist Scott Mabee, Ph.D., reported

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Plaintiff's daily activities included caring for his personal needs and household chores and his dog, helping his mother shop and visiting friends and his girlfriend.  Plaintiff's report to Dr. Mabee is substantially consistent with activities reported in earlier psychological examinations.  (Tr. 26, 28-29, 203-04, 220, 316, 372.)  The ALJ also found neurology specialist, Dr. William Bronson, reported no pathology to account for complaints of chronic pain, and prescribed aggressive physical therapy. (Tr. 34, 208.) These third-party medical source observations significantly erode Plaintiff's credibility. *Thomas*, 278 F.3d at 959.  The ALJ gave legally sufficient reasons for discounting Plaintiff's subjective complaints of disabling pain and limitations.

**B.   Evaluation of Treating Medical Source Opinions**

Plaintiff argues "the ALJ failed to accord proper weight to the opinions of treating physicians." (Ct. Rec. 15 at 14.)  However, he does not he treating physician opinions that were improperly rejected.  A treating physician is defined in the Regulations as a claimant's own physician (who is also an acceptable medical source) who has a frequent, consistent treatment relationship with the claimant and who has seen the claimant for treatment or evaluation required by a medical condition.  20 C.F.R. §§ 404.1502, 416.902. An examining physician is an acceptable medical source seen to obtain a report to support a disability claim.  A treating physician's opinion is generally given more weight than that of an examining physician because of the ongoing nature of the relationship.  A treating or examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v.*

*Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004).   If the treating physician's opinions are not contradicted, they must be rejected by the decision-maker with "clear and convincing" reasons.   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).   If contradicted, the ALJ may reject the opinion with specific, legitimate reasons that are supported by substantial evidence.   *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding the treating physician's opinion.   *Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir 1989).   The ALJ need not accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings."   *Lingenfelter*, 504 F.3d at 1044-45 (*citing Thomas*, 278 F.3d at 957).   Where an ALJ determines a treating physician's stated opinion is materially inconsistent with the physician's own treatment notes, legitimate grounds exist for considering the purpose for which the doctor's report was obtained and for rejecting the inconsistent, unsupported opinion.   *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).   "Although a treating physician's opinion is generally afforded the greatest weight in a disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."   *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).    In assessing the medical evidence, the ALJ properly may consider a claimant's credibility when there are conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

   Here, the extensive medical record includes reports and progress notes from treating physician William Stime, M.D., and treating orthopaedic specialist D. Scott Redman, M.D. (Tr. 347-58, 384-89, 404-22, 521-41, 556-74), as well as evaluations from examining physicians and psychologist, and non-examining agency physicians.    The medical evidence spans a period from 2003 until 2007.[1]  With the exception of a physical evaluation form completed by Dr. Stime on February 27, 2007, (Tr. 567-74) Plaintiff's physicians opined Plaintiff was capable of light to sedentary work.[2] (Tr. 355, 358, 522, 565.)  Because there are contradictory opinions in the record, Dr. Stime's 2007 Medical Source Statement does not merit controlling weight.  (Tr. 571-74.)    Further, in Dr. Stime's 2007 evaluation form, he stated Plaintiff would "probably rate at

---

   [1] Although Plaintiff alleged an onset date of January 1, 1998, (Tr. 629), he has not submitted medical evidence to support a claim of disability prior to 2003.  Earlier records cover the period from 1988 through 1993 (with the exception of one emergency room report, dated March 30, 1998, following Plaintiff's injury in a motor vehicle accident).  (Tr. 3, 127-40, 173.)

   [2] Orthopaedic specialist Dr. Vanderwilde, opined Plaintiff could do light to sedentary work.  (Tr. 358.)  The opinions of specialists are given more weight than physicians who do not have the relevant speciality. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

severely [limited] because of failure at recent job tries," rather than reference a medical condition that would render Plaintiff incapable of performing any work. (Tr. 569.)  The ALJ legitimately rejected this opinion because it was based on Plaintiff's unreliable self-report and was not consistent with the rest of Dr. Stime's records. (Tr. 34.)  *Flaten*, 44 F.3d at 1463-64.

Other medical sources relied upon by Plaintiff appear to be examining physicians or psychologists.  Regarding Dr. Figueroa's opinions, the ALJ evaluated the physician's records by summarizing the findings.  (Tr. 26.)  The record does not establish that Dr. Figueroa was a treating physician when he opined Plaintiff could not work in October 2003 (before Plaintiff had corrective surgery) and in April 2004.  (Tr. 152, 186.)  The record does not include notes or reports from Dr. Figueroa to support his opinion, and there is no evidence that Plaintiff met the duration requirement for the condition assessed by Dr. Figueroa.  20 C.F.R. §§ 404.1505, 416.905; *Social Security Ruling (SSR)* 82-52.   The ALJ was not obliged to accept Dr. Figueroa's brief, conclusory opinions. *Lingenfelter*, 504 F.3d at 1044-45.

Further, under the case law, a court can read from the ALJ's summary of the evidence and draw inferences relative to medical findings.  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ's discussion of conflicting opinions from Plaintiff's treating physician and the specialists support the ALJ's rejection of Dr. Figueroa's conclusory opinions.  As noted by the ALJ, after surgery, Dr. Stime and examining specialists consistently prescribed aggressive physical therapy and opined he could do light and/or

sedentary work.  (Tr. 30-31.)  The ALJ gave specific and legitimate reasons for rejecting unsupported medical source opinions that were inconsistent with treating and examining physicians records indicating Plaintiff could do light and/or sedentary work.

**C.   Residual Functional Capacity Assessment**

Plaintiff specifically argues the ALJ erred in his RFC determination because he failed to include limitations assessed by non-examining psychologist John McRae, Ph.D., and examining psychologist Robert Quackenbush, Ph.D., in the final RFC findings. (Ct. Rec. 15 at 14; Tr. 314-18, 319-21.)  He contends those opinions should have been included or rejected by "clear and convincing" evidence.  (Ct. Rec. 15 at 15.)

It is well-settled that the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities," in disability proceedings. *Richardson,* 402 U.S. at 400; *Andrews,* 53 F.3d at 1039; *SSR* 96-8p.  The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the Commissioner.  20 C.F.R. § 416.946; *SSR* 96-5p (RFC assessment is an administrative finding of fact reserved to the Commissioner).  No special significance is given to a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).  Further, where the ALJ's determination is a rational interpretation of the evidence, the court will not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097.

Here, after considering the medical evidence and credibility factors, the ALJ found Plaintiff had the RFC to perform light

exertion with the following limitations:

> He can occasionally climb stairs or ramps, but should avoid climbing ladders, ropes, and scaffolds. He can occasionally engage in stooping, crouching, crawling, kneeling, and balancing. He can occasionally reach overhead. He is capable of understanding, remembering, and carrying out short and simple instructions and superficial interaction with coworkers and the general public. He would find it necessary to change positions from time to time. Although he takes medication for relief of mild to chronic pain and other symptoms, he would be able to remain reasonably alert, attentive, and responsive to perform required job functions.

(Tr. 32-33.)

An independent review of the medical evidence shows that Dr. Quackenbush's narrative findings of no marked problems with attention, persistence or pace, and mild limitations caused by anxiety and pain are consistent with other psychological evaluations and the ALJ's RFC findings. (Tr. 317-18.) Dr. Quackenbush indicated a "fair to good" prognosis for Plaintiff with no marked cognitive problems. (Tr. 317.) It is noted the ALJ specifically addressed psychological limitations identified by Dr. Quackenbush, including Plaintiff's limited social competence, by including a limitation of "short and simple instructions and superficial interaction with coworkers and the general public." (Tr. 33, 317-18.)

Regarding Dr. McRae's Mental RFC, (Tr. 319-35), the narrative conclusions are consistent with Dr. Quackenbush's report and the ALJ's RFC. (Tr. 321, 335.) The ALJ did not err in giving more weight to these findings than the accompanying check box opinions. *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Specifically, Dr. McRae found Plaintiff was able to "follow positive goals

established by others;" perform simple work, with some detail; engage in brief transactions with co-workers and the general public; and reason and make judgments with average intelligence." (Tr. 321.) He also noted mild limitations caused by depression and/or anxiety. (*Id.*)

The hypothetical presented to the vocational expert at hearing included the final RFC limitations, and those limitations are supported by substantial evidence. (Tr. 657.) Therefore, the ALJ did not err in relying on vocation expert testimony that Plaintiff could perform his past work as a ticket taker.[3] *Magallanes,* 881 F.2d at 756.

## CONCLUSION

The ALJ thoroughly detailed the medical evidence in the record and properly evaluated the medical opinions in considering Plaintiff's ability to perform work-related activities. The evidence reasonably supports the ALJ's evaluation and rejection of Dr. Stime's conclusory opinion that Plaintiff was unable to do any type of work. The ALJ's credibility determination is legally

---

[3] A claimed error at step four would be harmless since the ALJ also made alternative step five findings, based on vocational expert testimony and substantial evidence in the record, that there were sedentary jobs in the national economy, such as cashier and assembly worker, that Plaintiff could perform. (Tr. 35, 659-60.) *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991); *see also Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995). As discussed in the body of this decision, there is substantial evidence that Plaintiff retained the ability to do sedentary work.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

sufficient and fully supported by the record in its entirety. His determination of non-disability is based on substantial evidence and free of legal error.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED;**

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED;**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, and the file shall be **CLOSED.**

DATED December 10, 2008.


                   S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE